IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

TINA REEP,                          : Civ. No. 1:24-CV-712
                                    :
            Plaintiff               :
                                    :
    v.                              :
                                    : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,                    :
Commissioner of Social Security,[1] :
                                    :
            Defendant               :

## MEMORANDUM OPINION

## I.    Introduction

On August 5, 2021, Tina Reep filed a Title II application for a period of disability and disability insurance benefits.  (Tr. 10).  Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Reep was not disabled from her alleged onset date of disability of June 8, 2021, through March 24, 2023, the date of the ALJ's decision.  (Tr. 26).

Reep now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  (Docs. 1, 14).  After a review of

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Frank Bisignano is substituted as the defendant in this suit.

the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.   Statement of Facts and of the Case

On June 8, 2021, Reep applied for disability insurance benefits, citing an array of physical and mental impairments, including severe anxiety, severe depression, panic attacks, post-traumatic stress disorder ("PTSD"), asthma, left hip pain, and irritable bowel syndrome. (Tr. 316). Reep was 32 years old at the time of the alleged onset of disability, had a limited education, and had no past relevant work. (Tr. 25).

With respect to Reep's alleged mental health impairments,[2] the record revealed the following: The earliest relevant medical records show that Reep began mental health treatment at Franklin Family Services

---

[2] Because Reep's appeal focuses primarily on her mental health impairments, we will similarly limit our discussion of the record to those impairments.

2

("FFS") in February of 2019, reporting anxiety, depression, and panic attacks. (Tr. 529). By that time, Reep's primary care provider ("PCP") had already prescribed Lorazepam. (*Id.*). Reep had several follow-ups at FFS where her providers suggested she try a selective serotonin reuptake inhibitor medication, which she consistently declined. (Tr. 508, 510-12, 525).

Reep transitioned her mental health care to Keystone Behavior Health in May of 2020. (Tr. 596). Certified Physician Assistant ("PA-C") Andrew Stowell diagnosed a severe episode of recurrent major depressive disorder without psychotic features, PTSD, and social anxiety disorder. (Tr. 599-600). Stowell recommended Reep continue with as-needed Lorazepam and begin taking Wellbutrin. (Tr. 588).

On July 6, 2020, Reep consulted with her PCP, Dr. Jeffrey Harris, for a pregnancy test and reported that she "did not feel she needs any medication for anxiety or depression." (Tr. 464). On July 27, 2020, Reep explained to Stowell that she had not taken Wellbutrin because she suspected she was pregnant. (Tr. 584). She agreed to try the Wellbutrin in a low-dose form. (*Id.*). But at a September 16, 2020, visit with Stowell,

3

Reep reported she had not done so, explaining she did not have a good feeling about Wellbutrin and was uninterested in medication besides Lorazepam. (Tr. 577).

Reep had an annual physical with her PCP in January of 2021, where she denied problems with anxiety and depression. (Tr. 467). She scored a zero on a two-question depression screening. (*Id.*). At a visit to FFS in May, however, Reep reported depression and anxiety, evinced by, *inter alia*, crying spells, depressed mood, feelings of guilt and helplessness, agitation, fearfulness, and ongoing worrying. (Tr. 495). Reep also reported she was suffering from panic attacks, which caused chest pain, a choking feeling, nausea, and palpitations. (*Id.*). Therapist Elizabeth Spresser diagnosed Reep with PTSD, major depressive disorder, and panic disorder with episodic paroxysmal anxiety. (Tr. 496).

In June of 2021, Stowell noted Reep was suffering from a severe episode of recurrent major depressive disorder, PTSD, and social anxiety disorder. (Tr. 546). Reep continued treatment with Stowell regularly through December 2022, and during this period she reported symptoms including decreased energy and motivation, sleep issues, anger and

irritability, anxiety, anxiety attacks, panic attacks, and flashbacks. (Tr. 537-47, 639-52, 700-01, 786-814). Stowell's clinical findings throughout this time consistently showed Reep displayed depressed, anxious, and irritable moods, anxious affect, and poor concentration and focus. (*Id.*).

At a March 2022 appointment with Stowell, Reep reported that Lorazepam was 90% effective in reducing her anxiety and panic attacks. (Tr. 639). Stowell increased Reep's Lorazepam dosage in May in response to increased panic attacks, which Reep attributed to stress. (Tr. 700). Reep reported in June that Lorazepam was helping with cluster panic attacks, denied any side effects, and reported increased concentration, to the point that she was able to play video games. (Tr. 808). In August, Reep reported she experienced panic attacks and PTSD symptoms on 28 days in the past month and attributed this to her driving a vehicle more often. (Tr. 800). Throughout October, November, and December of 2022, Reep continued to report panic attacks, anxiety, and depression. (Tr. 786, 789, 793). She reported issues with concentration at some visits, but not others. (Tr. 786, 794).

Stowell filled out a "mental impairment questionnaire" in September of 2022. (Tr. 748-56). He indicated he had treated Reep once every two-to-four weeks since May 2020, that her response to that treatment was minimal, and that she had suffered "many side effects with previously tried medications [,]" including dizziness, drowsiness, lethargy, fatigue, and loss of balance. (Tr. 749).

It is against this factual backdrop that the ALJ conducted a hearing in Reep's case on March 9, 2023. (Tr. 38). Reep and a vocational expert ("VE") both testified at this hearing. Reep testified about, *inter alia*, her activities of daily living, her ability to sit and stand for prolonged periods, her struggles with panic attacks, her stomach ailments, and her PTSD. (Tr. 41-60). The VE answered hypothetical questions from the ALJ and from Reep's attorney regarding what occupations a person with Reep's background and various specific limitations could perform. (Tr. 60-65).

Following this hearing, on March 24, 2023, the ALJ issued a decision denying Reep's application for benefits. (Tr. 10-26). In that decision, the ALJ first concluded that Reep met the insured status requirement through December 31, 2024. (Tr. 12). At Step 2 of the

sequential analysis that governs Social Security cases, the ALJ found Reep suffered from the following severe impairments: obesity, asthma, status post right ankle fracture, depression, social anxiety disorder, PTSD, and panic disorder. (*Id.*). At Step 3 the ALJ determined that Reep did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 13.).

Between Steps 3 and 4 the ALJ concluded that Reep retained the following residual functional capacity to:

> [P]erform less than the full range of light work as defined in 20 CFR 404.1567(b). She is limited to occasional climbing of ramps and stairs, balance, stoop, kneel, crouch, and crawl and never climbing of ladders, ropes, or scaffolds. She must avoid exposure to vibration, irritants, and hazards such as heights and machinery. She can understand and carry out simple, routine, repetitive tasks and can sustain attention for extended periods of two hour segments in a work environment free from fast paced production involving only simple work related decisions with few, if any, workplace changes.

(Tr. 16-17).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Reep's reported symptoms. The ALJ found that, with respect to Reep's testimony, Reep's "medically determinable impairments could

7

reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record [.]" (Tr. 18). The ALJ noted that Reep alleged significant limitations in this area, such as being capable of showering only twice a week, limited abilities to cook and drive, and difficulty doing yard work. (Tr. 20). The ALJ explained that Reep's testimony describing her limited activities was belied by the record, which showed that her treatment had been conservative, contained many normal clinical findings, and demonstrated that she was able to shop online, do some yard work, and assist her husband in using a wheelbarrow to bring in firewood. (*Id.*).

With respect to the medical opinion evidence, the ALJ was partially persuaded by the opinions of the state agency psychological consultants, Drs. John Gavazzi and Edward Jonas. (Tr. 21). The ALJ found Dr. Gavazzi's opinion persuasive only as to Reep's moderate limitation in her ability to adapt and manage herself. (*Id.*). The ALJ found Dr. Gavazzi's conclusion that Reep had limitations in interacting with others was

overly limiting, but his conclusion that Reep had only mild limitations in concentration, persistence, or pace was not limiting enough, as it was neither consistent with, nor supported by, certain abnormal findings related to Reep's ability to concentrate. (*Id.*). The ALJ concluded that the portion of Dr. Jonas' opinion finding Reep had moderate limitations interacting with others was belied by Reep's testimony and by certain pieces of record evidence. (Tr. 22-23). The ALJ found the rest of Dr. Jonas' opinion to be persuasive, as those findings were supported by and consistent with the medical record. (*Id.*).

Finally, the ALJ considered the opinion of PA-C Stowell and found it unpersuasive. (Tr. 24). Stowell opined that Reep had minimal capacity to adapt to changes in her environment, her functioning deteriorated when increased demands were made of her, she had marked limitations understanding, remembering, and applying information, extreme limitations interacting with others, concentrating, persisting or maintain pace, the capability to perform a job less than eighty percent of the time, and would need to be absent from work four or more days a month. (Tr. 24). The ALJ explained this opinion was not consistent with Stowell's

own treatment records, nor with documented clinical examination findings or Reep's lack of emergent or inpatient treatment for mental health impairments. (*Id.*).

The ALJ then found at Step 4 that Reep had no past relevant work but, at Step 5, found that she could perform other jobs that existed in significant numbers in the national economy, such as routing clerk, sorting clerk, and cleaner. (Tr. 25). Having reached these conclusions, the ALJ determined that Reep had not met the demanding showing necessary to sustain a claim for benefits and denied her claim. (Tr. 26).

This appeal followed. (Doc. 1). On appeal, Reep challenges the adequacy of the ALJ's decision, arguing it is not supported by substantial evidence. (Doc. 14 at 8-19). The appeal is now fully briefed and ripe for resolution. (Docs. 14, 16, 21). As discussed in greater detail below, having considered the arguments of counsel and carefully reviewed the record, we conclude that the ALJ's decision should be affirmed.

III.  **Discussion**

A. **Substantial Evidence Review – the Role of this Court**

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed

11

factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No.

12

3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather

13

the ALJ must discuss the evidence and explain the reasoning behind his decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes her from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits

14

under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments,

including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting*

16

*Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion

17

supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington,* 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, in light of the entire record, whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The claimant filed this disability application in August of 2021, after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

18

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion

without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r,* 577 F.3d 500, 506 (3d Cir.2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F.

20

Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms in light of the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the

second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated when considered in light of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and

22

effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

### E. This Case Will Be Affirmed.

Reep contends that the ALJ erred by omitting a credibly established limitation from the RFC, as well as improperly considering PA-C Stowell's opinion and Reep's subjective symptoms. (Doc. 14). For the reasons explained below, we find that any omission of the limitation from the RFC is harmless, and that Reep's other two claims of error amount to improper requests for the court to re-weigh the evidence. For those reasons, we will affirm the ALJ's decision, which we find is supported by substantial evidence.

Reep first alleges that the ALJ failed to include a limitation in the RFC to "one- or two-step tasks," despite finding the opinion of the state agency consultants persuasive. Instead, the RFC limited Reep to "simple, routine, repetitive tasks [.]" (Tr. 16). While we believe this to be a close case, we conclude that any error in omitting this limitation from

the RFC and the hypothetical to the VE is harmless and does not require a remand.

While an ALJ is not required to accept every limitation set forth in a persuasive opinion, the decision must adequately explain the rationale behind the RFC determination. *Durden*, 191 F. Supp. 3d at 455. Here, the ALJ found the opinions of both state agency psychological consultants, Drs. Gavazzi and Jonas, generally persuasive with the exception of some specific findings. (Tr. 21-23). Both of these opinions contain a variation of a limitation to "one- or two-step tasks." (Tr. 175, 188). Yet the RFC contains only the limitation to simple routine tasks and does not limit Reep to one- or two-step tasks. (Tr. 22-23, 16-17).

In our view, the ALJ's decision is supported by substantial evidence. In making this finding, we are persuaded by at least one case in this circuit that considered this same issue. In *Cowher v. O'Malley*, 2024 WL 3161865 (W.D. Pa. June 24, 2024), the court considered a similar argument by the plaintiff. In that case, the ALJ found persuasive two opinions that limited the plaintiff to "very short and simple instructions," but failed to include such a limitation in the RFC, instead

24

limiting the plaintiff only to "simple instructions." *Id.* at *7. The court first noted that "a difference exists between an individual capable of following 'simple instructions,' and an individual only capable of following 'very short and simple instructions (i.e., perform one and two step tasks)[.]'" *Id.* (citations to the record omitted). The court then considered how the Dictionary of Occupation Titles ("DOT") defines the different "reasoning development" levels associated with certain occupations: "Jobs at Reasoning Development Level 1 ('R1') require an employee to '[a]pply commonsense understanding to carry out *simple one- or two-step instructions*[,]' while Jobs at Reasoning Development Level 2 ('R2') require the ability to '[a]pply commonsense understanding to carry out *detailed but uninvolved written or oral instructions*[.]'" *Id.* (citing Appendix C – Components of the Definition Trailer, 1991 WL 688702 (emphasis in original)).

    The *Cowher* court went on to conclude that a limitation to "very short and simple instructions" was likely inconsistent with reasoning level 2 occupations. *Cowher*, 2024 WL 3161865 at* 7. The court further concluded that the ALJ failed to adequately explain the omission of such

a limitation despite finding the opinions setting forth such a limitation persuasive, finding that the ALJ never addressed his decision to limit the plaintiff to only "simple" instructions, nor explained his rejection of the more restrictive limitation to "very short and simple instructions." *Id.* at *8. However, in that case, the court ultimately found that this error was harmless, as the ALJ identified at least one occupation at Step 5 with a reasoning level 1 that the plaintiff could perform. *Id.* at *9-10.

Here, we similarly conclude that the ALJ's omission of a one- or two-step tasks limitation was not adequately explained in the decision. In this case, the ALJ found both state agency psychological consultants' opinions to be persuasive, with some exceptions. (Tr. 21-23). The ALJ specifically found that both opinions were unpersuasive with regards to limitations in interacting with others, and that Dr. Gavazzi's opinion did not impose sufficient limitations regarding concentration, persistence, or pace. (*Id.*). But these exceptions fail to establish any reasoning for the omission of the one- or two-step task limitation. Instead, the discussion of Dr. Gavazzi's opinion suggests that the ALJ thought there should be *greater* limitations regarding concentration, persistence, or pace than Dr.

Gavazzi opined necessary. While the ALJ may have relied on other evidence in the record to conclude that this limitation was not credibly established, there is nothing else in the decision to indicate which evidence he relied on or why he rejected this limitation. Accordingly, we conclude this case is like *Cowher* and others where an ALJ found an opinion including a one- or two-step task limitation persuasive, but failed to either include, or explain the exclusion of, that limitation.[3]

However, we conclude that this error is harmless. Social Security appeals are subject to harmless error analysis. *See Holloman v. Comm'r*

---

[3] *See e.g., Warren v. Dudek*, No. 1:24-cv-635, 2025 WL 1168276 at *6 (M.D. Pa. April 22, 2025) (finding error where an ALJ was persuaded by opinion including a one- or two-step task limitation but omitted that limitation and limited claimant only to simple repetitive tasks); *Shipman v. Kizakazi* [sic], No. 3:-22-cv-636, 2023 WL 5599607 at *6 (M.D. Pa. Aug. 29, 2023) (finding error where "the ALJ [did] not provide any explanation as to why he adopted these opinions in their entirety except for the limitation regarding one to two-step step tasks."); *Edwards v. Kijakazi*, No. 21-cv- 1429, 2023 WL 6387370 at *7 (E.D. Pa. Sep. 29, 2023) (ALJ erred in not addressing one- or two-step limitation and only limiting claimant to simple routine tasks, where ALJ had found the opinion in question persuasive); *Pondunajec v. Saul*, No. 3:19-cv-1938, 2020 WL 7319779 at *6 (M.D. Pa. Dec. 11, 2020) (opinion explicitly linked one- or two- step tasks to "simple job instructions," ALJ accorded opinion "great weight" but did not include that limitation).

*Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016).  Under the harmless error analysis, a remand is warranted only if the error "prejudices a party's 'substantial rights'"; that is, if the error "likely affects the outcome of the proceeding [.]"  *Hyer v. Colvin*, 72 F. Supp. 3d 479, 494 (D. Del. 2014).

In this case, the ALJ's decision at Step 5 identified three jobs that Reep could perform—routing clerk (DOT 222.587-038, 1991 WL 672123), sorting clerk (DOT 222.687-022, 1991 WL 672133), and cleaner (DOT 323.687-014, 1991 WL 672783).  Routing clerk and sorting clerk require a reasoning level two, whereas cleaner requires a reasoning level one.  As discussed in *Cowher*, as well as in several other cases we find persuasive, a limitation to one- or two-step tasks can (but does not always) preclude jobs requiring reasoning level two, as such jobs require that an individual be able to carry out "detailed but uninvolved written or oral instructions." *See Cowher*, 2024 WL 3161865, at *9-10; *see also Leach v. Kijakazi*, 70 F.4th 1251, 1257 (9th Cir. 2023) ("A level-two job with 'detailed but uninvolved . . . instructions' could require an employee to follow lengthy simple instructions. On the present record, then, we cannot determine whether the level-two jobs identified by the vocational expert require only

short, simple instructions."); *Thomas v. Berryhill*, 916 F.3d 307, 314 (4th Cir. 2019) ("We believe that Thomas, being limited to short, simple instructions, may not be able to carry out detailed but uninvolved instructions.").

Additionally, where the hypothetical questions asked of the VE omit an established limitation, courts have found that the resulting testimony may not be supported by substantial evidence, an error which is related to, but distinct from, the omission of the same from the RFC. *Chrupcala v. Heckler*, 829 F. 2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect all of a claimant's impairments that are supported by the record; otherwise, the question is deficient and the expert's answer to it cannot be considered substantial evidence." (citing *Podedworny v. Harris*, 745 F.2d 210 (3d Cir. 1984))).

On the one hand, such omissions have sometimes been held harmful error in relation to one- or two-step task limitations where the VE identified two occupations with a reasoning level of one. *Edwards*, 2023 WL 6387370 at *8-9 (failure to include to one- or two-step limitation in hypotheticals required remand—despite VE's findings including

reasoning level one jobs).  On the other hand, several courts have found that the presence of an occupation with a reasoning level of one is sufficient to hold the omission of a one- or two-step task limitation from the RFC or the VE hypotheticals, or both, as harmless.  *See Cowher*, 2024 WL 3161865 at *9-10; *Shipman*, 2023 WL 5599607 at *7; *Soto v. Kijakazi*, 2022 WL 4358087 at *11 (M.D. Pa. Sep. 20, 2022) (if reasoning level one occupations amount to a significant number of jobs then failing to pose a one- or two-step task limitation to VE is harmless); *Shingler v. Kijakazi*, 2022 WL 273426 at *13 (M.D. Pa. Jan. 28, 2022) (presence of "cleaner" occupation alone made omission of a one- or two-step task limitation in the RFC harmless.)

Reep bears the burden here of proving the error was not harmless. *Hyer v. Colvin,* 72 F. Supp. 3d 479, 494 (D. Del. 2014) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (collecting cases)) (a claimant must show how an error affected the outcome of the case).  She argues that the omission of the one- or two-step task limitation from the RFC was not harmless because the ALJ also found that she was unable to work in an environment requiring "fast paced production," and that the occupation

30

of cleaner "appears to be inconsistent" with that limitation. (Doc. 14 at 11). But there is nothing in the DOT description of cleaner that discusses pace or quotas or production, and Reep presents no other evidence that this occupation is incompatible with that limitation. Accordingly, Reep has not demonstrated that she was prejudiced from the omission of this limitation.

In sum, the ALJ apparently found the limitation to one- or two-step tasks to be credible, as he found opinions suggesting this limitation persuasive and did not disclaim the limitation. Accordingly, it was error to omit it from the RFC and the hypothetical to the VE. But these errors are harmless because the VE identified "cleaner" as a suitable occupation for Reep, a reasoning level one occupation that has jobs in significant numbers, and Reep has not shown the error was prejudicial. Thus, there is no basis to remand on this issue.

Reep next argues that "many" of the ALJ's reasons for rejecting the medical opinion of PA-C Andrew Stowell were "logically unsound." (Doc. 14 at 12). Reep contends that the ALJ failed to apply the appropriate regulatory framework in his evaluation of this medical opinion. But the

31

ALJ discussed both the supportability and consistency of this opinion. (Tr. 24). That is all that is required to satisfy his obligations. *See* 20 C.F.R. § 404.1520c(c). The remainder of Reep's argument in this area amounts to a request to re-weigh the evidence, which we are prohibited from doing. *Zirnsak,* 777 F.3d at 611. We conclude this argument is unavailing.

Reep's final claim of error fares no better. She alleges the ALJ improperly evaluated her symptom evidence. She argues that the ALJ's conclusion that medication helped her with her anxiety was belied by record evidence that she suffered from side effects, and also that the ALJ placed too much weight on Reep's ability to assist her husband with activities of daily living. (Doc. 14 at 16-19). We first note that the ALJ is permitted to consider the effectiveness of treatment and a claimant's activities of daily living. *See e.g., Skapely v. Colvin*, 2015 WL 7351583, at \*12 (M.D. Pa. Nov. 20, 2015) (affirming decision where the ALJ considered effectiveness of treatment to conclude the claimant was less than credible); *Russo v. Astrue*, 421 F. App'x 184, 190 (3d Cir. 2011) (finding no error where the ALJ considered the claimant's activities of

32

daily living and found the claimant not entirely credible) (nonprecedential). More fundamentally, the plaintiff's arguments amount to requests for this court to re-weigh the evidence, which we have explained is improper.

In sum, Reep's arguments are unavailing. The ALJ properly considered PA-C Stowell's medical opinion, and he made no errors in evaluation of Reep's symptom evidence. While omission of the one- or two-step task limitation was error, it was harmless. Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we find that substantial evidence supported the ALJ's evaluation of this case, and her decision will be affirmed.

## IV.  Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: May 27, 2025